UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES JAKOBSEN and RIKA MANABE, and their marital community,<br><br>Plaintiffs,<br><br>v.<br><br>ANNETTE BURROS, an individual; WELLS FARGO BANK N.A., a federally chartered banking association; et al.,<br><br>Defendants. | CASE NO. C19-1254 RSM<br><br>ORDER DENYING MOTION TO DISMISS PLAINTIFFS' EQUITABLE INDEMNITY CLAIM BY WELLS FARGO BANK, N.A. |

## I. INTRODUCTION

This matter is before the Court on the Motion to Dismiss Plaintiffs' Equitable Indemnity Claim by Wells Fargo Bank, N.A. Dkt. #36. Plaintiffs contend that their Amended Complaint for Quiet Title, Damages, Breach of Contract, and Injunctive Relief (Dkt. #32) adequately states a claim for equitable indemnity and that, regardless, Wells Fargo's motion to dismiss is premature. Dkt. #37. Having considered the matter, the Court agrees and denies the motion.

## II. BACKGROUND

The relevant history is set forth in Plaintiffs' Amended Complaint for Quiet Title, Damages, Breach of Contract, and Injunctive Relief (Dkt. #32) and recounted in their response to Wells Fargo's motion to dismiss:

ORDER – 1

Plaintiffs, James Jakobsen and Rika Manabe, own real property located at 6810 40th Ave. NE, Seattle, WA 98115 (the "Property"). *Plaintiffs' Amended Complaint for Quiet Title, Damages, Breach of Contract, and Injunctive Relief* (the "Complaint") at ¶ 3.1. In February 2019, Plaintiffs and Burrous entered into a Residential Real Estate Purchase and Sale Agreement (the "Agreement") for the sale and purchase of the Property. *Complaint* at ¶ 3.9. Burrous promised to convey the Property to Plaintiffs free and clear of all monetary encumbrances in the Agreement. She also promised to convey marketable title to the Property via statutory warranty deed at closing.

Prior to the Agreement, Burrous and her late husband, Anthony Burrous, had previously conveyed a deed of trust to Wells Fargo, King County recording no. 20071003000234 (the "Deed of Trust"). *Id.* at ¶ 3.3. On or about December 25, 2016, Burrous entered into a HAMP modification agreement with Wells Fargo to modify the loan against the Property. *Id.* at ¶ 3.5. As part of that modification, Wells Fargo employees informed Burrous that the loan against the Property had been waived and the Deed of Trust would be released. *Id.* at ¶ 3.10. Wells Fargo forgave the loan secured by the Deed of Trust. *Id.* at ¶ 3.6. Burrous relied on information from Wells Fargo when making a decision to sell the Property. *Id.* at ¶ 3.8. However, Wells Fargo provided false information to Burrous. *Id.*

CW Title acted as the escrow agent for the subject transaction. Based on the information provided to CW Title by Burrous (the false information provided by Wells Fargo), CW Title sought confirmation from Wells Fargo that the loan secured by the Deed of Trust was forgiven and that Wells Fargo would direct the trustee to reconvey the Deed of Trust. *Id.* at ¶ 3.10. Wells Fargo responded, twice, stating the account had been closed. *Id.* Wells Fargo said nothing regarding a balance remaining on an active account for Burrous. *Id.* CW Title also requested confirmation that the Deed of Trust would be reconveyed on March 6, 2019. *Id.* at ¶ 3.9. In response, Wells Fargo sent a letter to CW Title again confirming that the account had been closed and that the Deed of Trust would be reconveyed. *Id.*

In reliance on this confirmation that the Deed of Trust would be reconveyed, CW Title settled and closed the transaction on March 8, 2019. *Id.* at ¶ 3.12. Burrous conveyed the Property to Plaintiffs via statutory warranty deed as promised. *Id.* at ¶¶ 4.8, 4.9. The CW Title escrow account was closed on March 11, 2019 at 11:00 AM. *Id.* at ¶ 3.12. On March 11, 2019 at 3:21 PM, Wells Fargo stated for the first time that the remaining payoff of the loan secured by the Deed of Trust was $173,285.23 and that Wells Fargo would not reconvey the Deed of Trust. *Id.* at ¶ 3.13.

Wells Fargo initiated non-judicial foreclosure proceedings to foreclose on the Property now owned and occupied by the innocent Plaintiffs. *Id.* at ¶ 3.14. A trustee's sale to foreclose on the Deed of Trust was set for September 20, 2019. *Id.* Only after Plaintiffs initiated this action did Wells Fargo agree to cancel the trustee's sale pending resolution of this action.

ORDER – 2

Dkt. #37 at 2–3.[1]

**III. DISCUSSION**

**A. Legal Standard for Motion to Dismiss**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also* FED. R. CIV. P. 8(a)(2). While considering a Federal Rule of Procedure 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The court is not required, however, to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

---

[1] The Court made several minor alterations to the citations.

ORDER – 3

possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557). Absent facial plausibility, a plaintiff's claims must be dismissed.

**B. Equitable Indemnity**

The "American Rule" provides generally that "[e]ach litigant pays [their] own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010); *see also Ruckelshaus v. Sierra Club,* 463 U.S. 680, 683 (1983); *Blueberry Place Homeowners Ass'n v. Northward Homes, Inc.*, 126 Wash. App. 352, 358, 110 P.3d 1145, 1149–50 (2005). As a limited exception, Washington sometimes allows a party to recover attorneys' fees as consequential damages under a theory of equitable indemnity:

> Under this theory, "where the acts or omissions of a party to an agreement or event have exposed one to litigation by persons—that is, to suit by persons not connected with the initial transaction or event—the allowance of attorney's fees may be a proper element of consequential damages." "When the natural and proximate consequences of a wrongful act of A involve[s] B in litigation with others, B may as a general rule recover damages from A for reasonable expenses incurred in that litigation, including attorney's fees."

*Blueberry Place Homeowners Ass'n*, 110 P.3d at 1149–50 (citations omitted). Equitable indemnity is also sometimes referred to as an "ABC" claim, with three elements "necessary to create liability: (1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event[—]the wrongful act or omission of A towards B." *Manning v. Loidhamer*, 13 Wash. App. 766, 769, 538 P.2d 136, 138 (1975).

Wells Fargo maintains that Plaintiffs attempt to pursue a claim that, if it exists at all, is for Burros to pursue. Dkt. #38 at 1–3. Wells Fargo argues that Burros is necessarily cast as the

ORDER – 4

"B" party and that Plaintiffs, accordingly forced into the "C" role, may not pursue an equitable indemnity claim. *Id.* The Court does not agree that this is necessarily the case.

Washington case law certainly makes clear that the "ABC" formulation is the classic example of an equitable indemnity claim. But Wells Fargo does not adequately establish that the formulation is intended to restrict the underlying claim: "where the acts or omissions of a party to an agreement or event have exposed one to litigation by persons—that is, to suit by persons not connected with the initial transaction or event—the allowance of attorney's fees may be a proper element of consequential damages." *Blueberry Place Homeowners Ass'n*, 110 P.3d at 1149–50 (citations omitted).

Particularly important in this regard is *Wells v. Aetna Ins. Co.* 50 Wash.2d 880, 376 P.2d 644 (1962). In *Wells*, a car dealership sold Wells a car that was already encumbered by a lien. When the prior lien led the state to suspend Wells' title, he sued to quiet title, joining the car dealership, its insurer, the prior purported purchaser, and that purchaser's financier. *Id.* at 645. Title was ultimately quieted in Wells and Wells was awarded attorneys' fees on the basis of equitable indemnity. *Id.* In affirming, the Washington Supreme Court rejected the argument that Wells was not forced into litigation, indicating that he was "required to defend [his] right to the automobile against the claim asserted in the cross-complaint of" one defendant and an interpleader action of another defendant. *Id.* at 645–46.

The posture of this case is broadly that of *Wells*. Plaintiffs bought property to which Wells Fargo disclaimed an interest. When Wells Fargo changed course, Plaintiffs were compelled to sue and quiet title.[2] Taken as a whole, the amended complaint alleges a claim for

---

[2] In fact, Plaintiffs allege that they only initiated this action after Wells Fargo initiated nonjudicial foreclosure against Plaintiffs' property. Dkt. #32 at ¶ 3.15.

ORDER – 5

equitable indemnity that is sufficient at this stage of the proceedings.[3] *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) ("The purpose of a motion to dismiss under rule 12(b)(6) is to test the legal sufficiency of the complaint.") (citing *Peck v. Hoff,* 660 F.2d 371, 374 (8th Cir.1981)). "[A] case should be tried on the proofs rather than the pleadings." *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 213 (9th Cir. 1957) (citation omitted); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (basis for dismissal must be clear on the face of the complaint).

To be sure, there are real questions as to whether equitable indemnity is available to Plaintiffs in this case. Outside of *Wells*, no case addresses whether a plaintiff may directly seek equitable indemnity. Plaintiffs' case certainly is not the "classic formulation" of an equitable

---

[3] The Court further notes that Wells Fargo does not establish that Washington treats equitable indemnity as a standalone claim. Rather, equitable indemnity entitles a party to recover its attorneys' fees as an aspect of compensatory damages. *Thomas v. Gaertner*, 56 Wash. App. 635, 638, 784 P.2d 575, 577 (1990) ("where the natural and proximate consequences of the acts or omissions of a party to an argument or an event have exposed another person to litigation with a third person, equity may allow attorney fees as an element of consequential damages") (citations omitted); *see also Wells*, 376 P.2d at 645–646 ("The fees are a loss occasioned by the action of the wrongdoer."). The award of attorneys' fees still must be premised on a wrongful act or omission. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wash. App. 86, 105, 285 P.3d 70, 82 (2012) (citation omitted) (plaintiff must prove "that the defendant committed a 'wrongful act or omission' against the party bringing the claim"). "Generally, this wrongful act must involve a breach of contract or tortious conduct by the party against whom the claim is asserted." *Id.* at 82 (citing *Manning*, 538 P.2d 136).

To the extent Plaintiffs seek attorneys' fees only as an aspect of damages on another claim, Rule 12(b)(6) may not be the proper mechanism for Defendants to test the theory. *See United States v. Maricopa Cnty., Ariz.*, 915 F. Supp. 2d 1073, 1082 (D. Ariz. 2012) ("A 12(b)(6) motion to dismiss challenges the legal sufficiency of the pleadings, not the appropriateness of the relief sought."); *Redwind v. W. Union, LLC*, No. 3:18-CV-02094-SB, 2019 WL 3069864, at *4 (D. Or. June 21, 2019), *report and recommendation adopted*, No. 3:18-CV-2094-SB, 2019 WL 3069841 (D. Or. July 12, 2019) (Rule 12(b)(6) permits dismissal of a claim from the complaint, not components of individual claims).

ORDER – 6

indemnity action.[4] Further, the highly intertwined nature of Plaintiffs' claims against Burros and Wells Fargo may preclude equitable indemnity.[5] Likewise, Wells Fargo points out that Plaintiffs' associated claims against Burros may doom an equitable indemnity claim.[6] And lastly, Plaintiffs themselves may be too intricately involved in many of the transactions at issue.[7]

---

[4] *C.f. Curtley v. Sec. Savings Soc'y*, 46 Wash. 50, 89 P. 180 (1907). In *Curtley*, a land company sold Curtley a piece of land it no longer owned. Curtley contracted for construction of a residence and bought building plans. When the prior sale was discovered, Curtley had nowhere to build his house and sued the land company for his damages. Concurrently, the contractor sued Curtley and obtained a judgment for breach of their contract. When the land company was ultimately found liable to Curtley, the Washington Supreme Court explained that "the rule is that reasonable attorney's fees, when paid, or contracted to be paid, for defending an action, are a part of the damages, and are recoverable under circumstances that will permit a recovery of the amount of the judgment entered in the action." Accordingly, Curtley's damages included the amount of the judgment in his breach of contract case and his reasonable attorneys' fees for defending that action.

Certainly, Plaintiffs are in a different position here. They were not forced to defend against another's lawsuit because of Wells Fargo's actions and instead chose to initiate the action to quiet title. But in *Wells* the Washington Supreme Court set forth the claim as merely involving "plaintiff in litigation with others." *Wells*, 376 P.2d at 645. Similarly, the *Wells* court did not indicate whether the award of fees was limited to the fees expended defending cross-claims or extended to all fees expended "to defend [his] right to the automobile." *Id.*

[5] The third party involved in the litigation must be unconnected from the original transaction. *Manning*, 538 P.2d at 138 ("The original suit generating the expenses must be instituted by a third party not connected with the original transaction.") (citing *Armstrong Constr. Co. v. Thomson*, 64 Wash.2d 191, 195, 390 P.2d 976 (1964)).

[6] "[A] party may not recover attorney[s'] fees under the theory of equitable indemnity if, in addition to the wrongful act or omission of A, there are other reasons why B became involved in litigation with C."*Blueberry Place Homeowners Ass'n*, 110 P.3d at 1150 (quoting *Tradewell Group, Inc. v. Mavis*, 71 Wash. App. 120, 857 P.2d 1053, 1057 (1993)).

[7] *Porter v. Kirkendoll*, 194 Wash. 2d 194, 210–11, 449 P.3d 627, 637 (2019) (noting that a critical inquiry is whether the party seeking equitable indemnity was "exposed" or "involved" in litigation on account of their own actions) (citation omitted); *see also Newport Yacht Basin Ass'n of Condo. Owners*, 285 P.3d at 82 ("because Bridges' own acts and omissions contributed to its involvement in litigation with Seattle Boat, as did the negligent acts and omissions of the title insurer, Bridges cannot rely on principles of equitable indemnification").

ORDER – 7

But these issues typify the necessarily detailed consideration of each individual interaction and the concurrent involvement of the parties and their agents and precisely which transaction caused Plaintiffs to incur legal expenses. These questions cannot be answered at this stage of the proceedings. *C.f. Murphy v. Fid. Abstract & Title Co.*, 114 Wash. 77, 78, 194 P. 591, 592 (1921) (considering application of equitable immunity where case proceeded on undisputed facts). Indeed, most Washington cases addressing the issue of equitable indemnity follow a trial and the claims are generally raised in the context of a post-trial motion for attorneys' fees. *Id.*; *Armstrong Const. Co. v. Thomson*, 64 Wash. 2d 191, 390 P.2d 976 (1964); *Manning*, 538 P.2d 136; *N. Pac. Plywood, Inc. v. Access Rd. Builders, Inc.*, 29 Wash. App. 228, 236, 628 P.2d 482, 487 (1981); *Tradewell Grp., Inc. v. Mavis*, 71 Wash. App. 120, 857 P.2d 1053 (1993); *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wash. App. 86, 285 P.3d 70 (2012).

## IV. CONCLUSION

Having considered the motion, the relevant briefing, and the remainder of the record, the Court hereby finds and ORDERS that the Motion to Dismiss Plaintiffs' Equitable Indemnity Claim by Wells Fargo Bank, N.A. (Dkt. #36) is DENIED.

Dated this 31 day of March, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 8